UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| ONE (1) 2015 CHEVROLET SS, VIN: 6G3F15RW6FL116633, | ) ) ) ) |
| Defendant. | ) |

## VERIFIED COMPLAINT OF FORFEITURE

The United States of America for its Verified Complaint for Forfeiture states as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought by the United States of America seeking forfeiture of all right, title, and interest in the above-captioned Defendant Property pursuant Title 21, United States Code, Section 881(a)(4)&(6) and Title 18, United States Code, Sections 981(a)(1)(A).

2. The Defendant Property was seized by law enforcement on or about May 4, 2021, and is described more fully as one 2015 Chevrolet SS, VIN: 6G3F15RW6FL116633 (the Defendant Property).

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345, 1355, and 1395.

4. Venue is proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because the acts and omissions giving rise to forfeiture took place in the Eastern District of

1

Missouri. Venue is also proper pursuant to Title 28, United States Code, Section 1395(b) because the Defendant Property was seized in the Eastern District of Missouri.

## STATUTORY FRAMEWORK

5. Title 21, United States Code, Section 881(a)(4) authorizes the civil forfeiture of "all conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9)."

6. Title 21, United States Code, Section 881(a)(6) authorizes the civil forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

7. Title 18, United States Code, Section 1956(a)(1)(A)(i) criminalizes conducting a transaction, including transferring, delivering, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, with the intent to promote the carrying on of the specified unlawful activity.

8. Title 18, United States Code, Section 1956(a)(1)(B) criminalizes conducting a transaction, including transfer, delivery, or other disposition, knowing that such transaction represents the proceeds of some form of unlawful activity and that in fact involves the proceeds of a specific unlawful activity, including violations of the Controlled Substances Act, knowing that

the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

9. The term "specified unlawful activity" is defined at Title 18, United States Code, Section 1956(c)(7)(A) to include, among other things, violations of the Controlled Substances Act.

10. 18 U.S.C. § 1957 criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity (including mail and wire fraud) in an amount greater than $10,000.

11. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Sections 1956 or 1957, or any property traceable to such property, is subject to civil forfeiture.

**FACTS GIVING RISE TO THE FORFEITURE**

12. Beginning in 2018, the Drug Enforcement Administration (DEA) began investigating a drug trafficking organization (DTO) transporting kilogram quantities of cocaine, heroin, and fentanyl from Mexico to St. Louis, Missouri. Freeman Whitfield, IV, a/k/a, "Mr. Furley," "Fuley," "Furl," "Mr. Farley," "Farley," "Furley Beam," was identified as being a lower-level heroin and/or fentanyl distributor and identified as a "shooter" for the DTO.

13. During the course of the conspiracy, investigators monitored several court-authorized wire intercepts between Guy R. Goolsby, another member of the DTO, and Whitfield. The wire intercepts showed Goolsby and Whitfield were both members of the DTO.

14. In May 2019, Goolsby and other members of the DTO were indicted in the Eastern District of Missouri (Case No. 4:19CR00412 AGF) for their involvement in the large-scale drug trafficking ring. After the indictment, Antonio Boyd agreed to cooperate with investigators in the

prosecution of Goolsby and other members of the conspiracy. Boyd identified Whitfield as a lower-level distributor and "shooter" for the DTO.

15. On December 9, 2019, Boyd was shot and killed in St. Louis, Missouri. Whitfield was later convicted at trial for participating in the murder of Boyd (Case No. 4:21CR00324 MTS).

16. In July 2020, undercover investigators purchased gram amounts of fentanyl from Whitfield. They continued to conduct surveillance on Whitfield and observed him conduct several car-to-car transactions consistent with street-level fentanyl sales.

17. During the investigation, investigators identified several cellular telephones used by Whitfield. From there, investigators identified recorded calls between Whitfield and inmates incarcerated by the Missouri Department of Corrections (MDC).

18. Investigators identified a call between and inmate and Whitfield wherein Whitfield can be heard revving the engine of a vehicle for the inmate to hear. The two began speaking about the vehicle, and Whitfield said he had recently acquired a "Chevy SS" that resembled a "[Pontiac] G8." Whitfield also told the inmate that the Chevy SS was his "personal" and not his "hot box." The term "hot box" is street slang for a stolen vehicle.

19. In essence, the Pontiac G8 and the Chevy SS are re-badged versions of the same vehicle, the Holden Commodore, manufactured in and imported from Australia by Holden General Motors, with different accessories and some minor cosmetic differences for marketing and sale in the United States. The Chevrolet SS and the Pontiac G8 have similar body styles. The Chevrolet SS also was equipped with a powerful engine V-8, 400+ horsepower engine from the 2008-2013 Chevrolet Corvette. The Chevrolet SS was a relatively rare car with only a few thousand being sold throughout the United States each year from 2013-2017.

20. Investigators tracked a cellular telephone utilized by Whitfield to the area of 12388

4

Tributary, Apartment I, Maryland Heights, Missouri ("Tributary"). There, investigators observed the Defendant Property parked in a numbered parking spot near the entrance of the Tributary residence. Investigators learned the license plate on the Defendant Property was stolen.

21. Throughout March and April 2021, investigators watched Whitfield conduct a typical routine. Each morning, Whitfield typically exited the Tributary residence with a satchel or "man bag" and traveled directly to an apartment located at 275 Union Boulevard, St. Louis, Missouri ("Union"). Whitfield exited the apartment at various times throughout the day and meet with other vehicles, sometimes in rapid succession, consistent with street-level drug sales. After the car-to-car meetings, Whitfield returned to the Union residence.

22. The surveillance further revealed Whitfield used the Defendant Property as well as numerous rental vehicles. The Defendant Property was often parked at both the Tributary and Union residences in assigned, numbered parking spots. Neither the Defendant Property nor the rental vehicles were registered in Whitfield's name; instead, they were often in the name of family members or other associates.

23. On March 9, 2021, investigators covertly approached the Defendant Property and attempted to ascertain the Vehicle Identification Number (VIN) affixed to the front dashboard area. That VIN plate appeared to be fictitious. A computer database check of the VIN appearing on the front dashboard that day did not list a specific vehicle with ownership/registration information. The check only returned that the Defendant Property was a 4-door vehicle registered to Florida Farm Bureau Group.

24. Investigators obtained search warrants for the Union and Tributary residences on May 4, 2021. Execution of the Union warrant revealed multiple firearms, fentanyl, six cellular phones and $9,447.00 U.S. currency, among other items. Execution of the Tributary warrant

revealed multiple firearms, three cellular phones, $32,765.00 U.S. currency, and the key to the Defendant Property. The Defendant Property was parked at the Tributary residence.

25. The searches further revealed paperwork at both residences related to automotive repair work performed on the Defendant Property and a 2014 Jeep Grand Cherokee. The customer name on the paperwork was "Jay White" and the customer phone number listed was a number known to the investigative team to be utilized by Whitfield. "Jay White" was a fictitious name known by investigators to be used by Whitfield to avoid law enforcement detection.

26. The U.S. Currency seized from both locations was comprised mostly of $20 denominations, which is typical of drug proceeds.

27. The Defendant Property was purportedly purchased as salvage by Demetrius Nabors on January 4, 2021 and registered to STL Oak Enterprises. According to the Missouri Secretary of State, Demetrius Nabors and SaVonne Nicole Whitfield filed Articles of Organization for STL Oak Enterprises in Missouri on March 13, 2020.

28. Investigators did not observe either Nabors nor SaVonne Whitfield use the vehicle.

29. Demetrius Nabors, on behalf of STL Oak Enterprises, claimed ownership of the vehicle after noticed of its intended forfeiture by the DEA.

## COUNT ONE – FORFEITURE
## 21 U.S.C. § 881(a)(4) & (6)

30. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 29 above as if fully set forth herein.

31. The Defendant Property consists of a vehicle purchased with the proceeds of drug trafficking and used to facilitate drug trafficking.

32. Upon belief, the Defendant Property is a vehicle that was used, or intended for use, for the transportation of controlled substances for drug trafficking.

33. As such, the Defendant Property is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) as a thing of value furnished or intended to be furnished, in exchange for a controlled substance, or as proceeds traceable to such an exchange.

34. Further, the Defendant Property is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(4) as a vehicle that was used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance, in violation of the Controlled Substances Act.

## COUNT TWO – FORFEITURE
## 18 U.S.C. § 981(a)(1)(A)

35. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 29 above as if fully set forth herein.

36. The purchase of the Defendant Property represents a straw purchase made for and on behalf of Whitfield using funds from Whitfield which Whitfield obtained, or are derived from, his drug trafficking.

37. The purchase of the Defendant Propety constitutes a financial transaction designed to conceal or disguise the nature, location, source, ownership and/or control of the proceeds used to purchase the vehicle, in violation of 18 U.S.C. § 1956.

38. Further, according to the purchase receipt submitted by Nabors, the Defendant Property was purchased for an amount greater than $10,000 in violation of 18 U.S.C. § 1957.

39. As such, the Defendant Property is subject to forfeiture, pursuant to Title 18, United Stated Code, Section 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1956 and 1957, or as property traceable to such property.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that a Warrant for Arrest be issued in rem for the Defendant Property and it be condemned and forfeited to the United States of America, in accordance with the provisions of law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Stephen Casey*
STEPHEN CASEY, #58879MO
Assistant United States Attorneys
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone: (314) 539-2200

## **VERIFICATION**

I, James Gaddy, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with the Drug Enforcement Administration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/20/24
(date)

_____
JAMES GADDY
Task Force Officer
Drug Enforcement Administration